```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ANDREW C. MALETTA and POLLY
MALETTA,

       Plaintiffs,

v.                                    Case No: 2:20-cv-1004-JES-MRM

DAVID WOODLE and FREDERICK
J. LANGDON,

       Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendants' Motion to Dismiss or in the Alternative Motion for More Definiete [sic] Statement and Motion to Strike Plaintiffs' Amended Complaint (Doc. #27) filed on March 29, 2021. Plaintiffs filed a Response in Opposition (Doc. #29) on April 14, 2021. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Plaintiffs Andrew and Polly Maletta initiated this matter in December 2020 and filed an Amended Complaint (Doc. #21) in March 2021 against defendants David Woodle and Frederick J. Langdon. The Amended Complaint alleges the parties are all owners or tenants of properties located in the RiverBend Motorcoach Resort (RiverBend) in LaBelle, Florida. (Id. ¶¶ 8-10.) The Amended Complaint further alleges that defendants authored and published

a document, the "Cancer on our Resort Letter," in which defendants accused Andrew Maletta of "ferment[ing] discord and dissent" in the community. (Doc. #21, ¶¶ 22-24; Doc. #1-1, p. 1.)[1] The document also contains a list of twenty-one past instances of "behavioral issues" by "the owner in question," relating to physical and legal threats, libelous statements, and accusations against other RiverBend owners. (Doc. #1-1, pp. 1-2.) The letter concludes as follows:

> The owner in question is Andrew Maletta on lot 50. He has been spoken to at length over the years by various people over his continued disruptive behavior and its effect on the community to no avail. The disharmony caused by this behavior affects the appeal of the resort and that in turn likely depresses our property values. We trust most of us can look past his sponsorship of the Margarita parties . . . three time [sic] a season as a naked attempt to curry favor with the uninformed. We will no longer be in this category and urge all to consider this letter. Please assist the undersigned in either no longer condoning this behavior or encouraging him to move on to somewhere that it may be welcome. Each of the undersigned is happy to discuss the contents of this letter with anyone.

---

[1] Plaintiffs filed an initial Complaint in December 2020 that included the Cancer on our Resort Letter as an exhibit. (Doc. #1; Doc. #1-1.) The Court dismissed the Complaint as a shotgun pleading (Doc. #17), and plaintiffs subsequently filed the Amended Complaint but failed to reattach the exhibit. Nonetheless, because the Amended Complaint references the Cancer on out Resort Letter repeatedly, the Court will consider the document incorporated by reference. See Agostino v. City of Cape Coral, 2017 WL 6041772, *1 (M.D. Fla. Dec. 6, 2017) (considering exhibits attached to original complaint as incorporated by reference into amended complaint).

(Id. p. 2.) The letter contains approximately a hundred signatures, presumably all RiverBend owners or tenants. (Id. pp. 2-4.)

The Amended Complaint asserts five claims against both defendants: (1) defamation; (2) defamation per se; (3) invasion of privacy; (4) intentional infliction of emotion of distress (IIED); and (5) civil conspiracy. (Doc. #21, pp. 6-13.) Defendants have filed a motion seeking to dismiss each of the claims as insufficiently pled or, alternatively, to strike plaintiffs' request for punitive damages and attorney's fees.[2] (Doc. #27.) The Court will address these arguments in turn.

**II.**

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

---

[2] While the title of defendants' motion references a "More Definiete [sic] Statement," the body of the motion neither requests such relief nor argues why it is necessary or appropriate. See N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**B. Application of Motion to Dismiss Principles**

**(1) Defamation**

Count One alleges a claim of defamation, asserting defendants authored and published false and defamatory statements in the Cancer on our Resort Letter with either knowledge of their falsity or with reckless disregard for the truth. (Doc. #21, ¶¶ 36, 41.) The Amended Complaint further alleges that as a result of the false and defamatory statements, plaintiffs "have suffered significant reputational harm, been subject to scorn, ridicule and have been shunned by resort community residents." (Id. ¶ 43.)

Defendants argue that because "[m]any of the alleged defamatory statements are nothing more than objective observation and hyperbolic rhetoric, which cannot be reasonably stated as stating actual facts," the claim fails. (Doc. #27, p. 3.) The Court disagrees.

Under Florida[3] law, defamation has the following five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement

---

[3] As a federal court sitting in diversity jurisdiction, the Court applies the substantive law of the forum state, Florida, alongside federal procedural law. Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011).

5

must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). Regarding this last element, Florida law requires "that the statement at issue be reasonably capable of a defamatory interpretation; this determination is to be made by the trial judge in the first instance, prior to the jury's evaluation of whether the statement was in fact understood as defamatory." Keller v. Miami Herald Pub. Co., 778 F.2d 711, 714-15 (11th Cir. 1985).

Nonetheless, "a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of 'fact.'" Horsley v. Rivera, 292 F.3d 695, 701 (11th Cir. 2002) (citations omitted). The Constitution also "provides protection for 'rhetorical hyperbole' that 'cannot reasonably be interpreted as stating actual facts about an individual.'" Id. (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)). "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or nonactionable expressions of rhetorical hyperbole." Murray v. Pronto Installations, Inc., 2020 WL 6728812, *4 (M.D. Fla. Nov. 16, 2020) (citation omitted).

> A statement is considered rhetorical hyperbole when the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation. Although rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target.

6

> In determining whether an allegedly defamatory statement is an expression of fact or an expression of rhetorical hyperbole, context is paramount.

Id. at *5 (marks and citations omitted). "All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published." Keller, 778 F.2d at 714 (citation omitted).

Turning to the Cancer on our Resort Letter, the document contains a list of "behavioral issues" relating to Andrew Maletta, which was compiled after "[a] careful review based on discussions with owners, board members and others." (Doc. #1-1, p. 1.) The list contains twenty-one past incidents in which Andrew Maletta, *inter alia*, made physical and legal threats, false statements and accusations, and generally caused problems for the RiverBend community. (Id. pp. 1-2.) The document concludes by (1) asserting Andrew Maletta's behavior has created disharmony affecting the appeal of the resort and likely depressing property values, and (2) recommending other owners consider the letter and assist defendants "in either no longer condoning this behaviour or encouraging him to move on to somewhere it may be welcome." (Id. p. 2.) Having considered the context in which the letter was written and the audience to which it was disseminated, the Court finds that the statements therein are not non-literal assertions of fact or rhetorical hyperbole.

The Court also finds the statements in the document are "reasonably capable of a defamatory interpretation." Keller, 778 F.2d at 714; see also Bernath v. Seavey, 2017 WL 3268481, *7 (M.D. Fla. May 18, 2017) ("A defamatory statement is one that tends to harm someone's reputation in the community or deters others from associating with the person."). Accordingly, Count One sufficiently states a claim for defamation and the Court declines to dismiss the claim as to plaintiff Andrew Maletta.

However, it is clear the Cancer on our Resort Letter contains no references to Polly Maletta, let alone any defamatory statement regarding her. The Court will therefore grant defendants' motion to dismiss Count One for failure to state a claim as to Polly Maletta. (Doc. #27, p. 4.)

**(2) Defamation Per Se**

Count Two alleges that the statements contained in the Cancer on our Resort Letter constitute defamation per se. (Doc. #21, ¶¶ 47-48.) "Per se defamatory statements are 'so obviously defamatory' and damaging to [one's] reputation' that they 'give[] rise to an absolute presumption both of malice and damage.'" Bernath, 2017 WL 3268481, *7 (quoting Wolfson v. Kirk, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)).

"A claim for defamation per se may proceed under a theory of libel per se or slander per se depending on the facts of the case." Id. Defendants argue the statements contained in the Cancer on

8

our Resort Letter do not constitute slander per se. (Doc. #27, p. 5.) However, as the statements at issue were written, slander per se does not apply to the facts of this case. See My Energy Monster, Inc. v. Gawrych, 2020 WL 8224616, *12 (M.D. Fla. Dec. 18, 2020) ("Defamation encompasses both libel and slander. Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements."). Having reviewed the statements contained in the Cancer on our Resort Letter, the Court finds Count Two sufficiently states a claim for defamation per se. See Bernath, 2017 WL 3268481, *7 (noting that a published statement is libelous per se if, *inter alia*, "it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace"); Colbert v. Anheuser-Busch, Inc., 2013 WL 12145017, *2 (M.D. Fla. Mar. 5, 2013) (noting that under Florida law, "[f]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory *per se*"). Accordingly, the Court declines defendants' request to dismiss Count Two as to plaintiff Andrew Maletta, but will dismiss the claim as to Polly Maletta for the same reason discussed above as to Count One.

**(3) Invasion of Privacy**

Count Three alleges the statements in the Cancer on our Resort Letter "have given publicity to matters concerning Plaintiffs that unreasonably place them in a false light before residents and tenants of the RiverBend community." (Doc. #21, ¶ 50.) The

9

Amended Complaint further alleges that "[t]he false light in which Plaintiffs have been placed by Defendants would be highly offensive to a reasonable person," and that plaintiffs have been harmed "[a]s a direct and proximate result of the false light in which Plaintiffs have been placed by Defendants." (Id. ¶¶ 52, 56.)

Defendants seek to dismiss the invasion of privacy claim because it fails to allege defendants published private and offensive facts about plaintiffs. (Doc. #27, p. 5.) However, the Court will dismiss the claim for a more straightforward reason: such a cause of action is not recognized under Florida law. See Jews for Jesus, 997 So. 2d at 1114 ("[W]e decline to recognize a cause of action for false light invasion of privacy."); see also Dowbenko v. Google Inc., 582 F. App'x 801, 804 (11th Cir. 2014) ("Mr. Dowbenko's false light invasion of privacy claim fails because Florida law does not recognize such a cause of action."). Accordingly, Count Three will be dismissed with prejudice as to both plaintiffs.

**(4) Intentional Infliction of Emotional Distress**

Count Four alleges defendants' "conduct in authoring, publishing, soliciting for signatures and republishing the false and defamatory statements in the Cancer on our Resort document was both intentional and outrageous," and that such conduct caused plaintiffs to suffer damages. (Doc. #21, ¶¶ 58-59.) Defendants

argue the claim is insufficiently pled and should be dismissed. (Doc. #27, p. 6.)

As to Polly Maletta, the Court finds Count Four fails because it relies upon conduct not directed at her. To state an IIED claim under Florida law, a plaintiff must allege, *inter alia*, outrageous conduct. <u>Tillman v. Orange Cnty., Fla.</u>, 519 F. App'x 632, 636 (11th Cir. 2013). Not only must such conduct be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," <u>id.</u> (citation omitted), it "must be directed at the plaintiff and in her presence," <u>Dunkel v. Hedman</u>, 2016 WL 4870502, *10 (M.D. Fla. Aug. 17, 2016). Here, the IIED claim is premised upon the allegedly false and defamatory statements contained in the Cancer on our Resort Letter. (Doc. #1, ¶ 58.) Because those statements do not even reference Polly Maletta, they cannot constitute "outrageous conduct" for purposes of her IIED claim. <u>See</u> <u>Baker v. Fitzgerald</u>, 573 So. 2d 873 (Fla. 3d DCA 1990) ("Appellant's claim for intentional infliction of emotional distress fails because there was no showing of outrageous conduct directed at appellant herself."); <u>M.M. v. M.P.S.</u>, 556 So. 2d 1140, 1141 (Fla. 3d DCA 1989) ("Appellants were not present when the alleged mistreatment of their daughter took place and may not claim emotional distress for her injurious or offensive treatment."). Accordingly, the claim will be dismissed with prejudice as to Polly

Maletta. See Kantrow v. Celebrity Cruises, Inc., 2020 WL 9065878, *10-12 (S.D. Fla. Dec. 29, 2020) (dismissing IIED claim with prejudice for failing to sufficiently allege outrageous conduct).

As to Andrew Maletta, the Court agrees with defendants that he "cannot transform a defamation action into a claim for intentional infliction of emotional distress." (Doc. #27, p. 6 (quoting Fridovich v. Fridovich, 598 So. 2d 65, 70 (Fla. 1992)). "Florida courts have held that the outrageous conduct supporting a claim for IIED must be separate from, or independent of, the alleged defamation." Porter v. Sanchez, 2017 WL 5157898, *4 (M.D. Fla. Nov. 7, 2017). Accordingly, "[a]n attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail." Ortega Trujillo v. Banco Cent. Del Ecuador, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998). Instead, "[t]he claim for intentional infliction of emotional distress must stem from outrageous conduct separate from the defamation and not merely '[re]describe the tort of libel while characterising it as outrageous conduct.'" Id. (marks and citation omitted).

As noted, the IIED claim is premised entirely on the defendants' conduct in authoring and publishing the Cancer on our Resort Letter, and therefore is based on the same publication as Andrew Maletta's defamation and defamation per se claims. Accordingly, Count Four will also be dismissed with prejudice as

12

Andrew Maletta. See Rubinson v. Rubinson, 474 F. Supp. 3d 1270, 1279 (S.D. Fla. 2020) (dismissing IIED claim with prejudice because, *inter alia*, it was based entirely on conduct described in defamation per se claim); Ortega, 17 F. Supp. 2d at 1343 (dismissing IIED claim with prejudice because it arose from the same publication at issue in defamation claim).

**(5) Civil Conspiracy**

Count Five asserts a claim of civil conspiracy. (Doc. #21, p. 12.) "Florida law does not recognize an independent cause of action for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based." Merchant One, Inc. v. TLO, Inc., 2020 WL 248608, *8 (S.D. Fla. Jan. 16, 2020). Accordingly, under Florida law, the elements of civil conspiracy are

> (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.

HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc., 302 F. Supp. 3d 1319, 1324-25 (M.D. Fla. 2016) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1271 (11th Cir. 2009)).

The Amended Complaint alleges defendants (1) conspired and agreed to author and publish false and defamatory statements, and (2) engaged in a campaign to suppress comments opposing or correcting the statements and to suppress plaintiffs' ability to

defend themselves.  (Doc. #21, ¶¶ 61-65.)  The Amended Complaint further alleges that defendants intended to drive plaintiffs from RiverBend and their actions caused plaintiffs to suffer damages. (Id. ¶¶ 66-67.)

Defendants seek to dismiss the civil conspiracy claim because plaintiffs "allege no unlawful act nor doing a lawful act by unlawful means in this count."[4]  (Doc. #27, p. 7.)  The Court agrees in part.  The civil conspiracy claim fails to the extent it relies on defendants' alleged suppression of plaintiffs' speech as the underlying unlawful act.  See Manhattan Cmty. Access Corp. v. Halleck, 139 S.Ct. 1921, 1928 (2019) ("[T]he Free Speech Clause [of the First Amendment] prohibits only *governmental* abridgment of speech.  The Free Speech Clause does not prohibit *private* abridgment of speech.").

While defamation may be considered an unlawful underlying act for purposes of a civil conspiracy claim, the Court nonetheless finds Count Five must be dismissed for a separate reason: it violates Florida's single publication/single action rule.  "In Florida, a single publication gives rise to a single cause of

---

[4] Defendants also note generally that plaintiffs "reference 'Non-Parties,'" and that such individuals "are indispensable parties to [plaintiffs'] claim of civil conspiracy."  (Doc. #27, p. 7.)  However, because defendants have moved for dismissal of Count Five only for failure to state a claim, and not for failure to join a required party, the Court will not address this issue.

action. The various injuries resulting from it are merely items of damage arising from the same wrong." Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citation omitted). The single publication/single action rule "is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." Id. (citation omitted). Accordingly, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." Klayman v. Jud. Watch, Inc., 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014).

Here, the Amended Complaint alleges defendants "conspired and agreed among themselves to author and publish false and defamatory statements, including those appearing in the Cancer in Our Resort document, concerning Plaintiffs." (Doc. #21, ¶¶ 61, 62.) However, the allegedly defamatory statements in the Cancer in our Resort Letter cannot form the basis for the conspiracy claim because they also form the basis for the defamation and defamation per se claims.[5] Accordingly, the civil conspiracy claim violates

---

[5] The Court recognizes that the conspiracy claim alleges defendants published defamatory statements, "including those appearing in the Cancer in Our Resort document." (Doc. #21, ¶¶ 61-63.) While this implies there may have been additional

15

Florida's single action rule and Count Five will be dismissed as to each plaintiff. See Ortega, 17 F. Supp. 2d at 1339 (finding invasion of privacy claim precluded because "it is based on the same facts giving rise to the claim for defamation"); Thomas v. Patton, 2005 WL 3048033, *4 (Fla. Cir. Ct. Oct. 21, 2005) (granting summary judgment on conspiracy to defame claim because, *inter alia*, it was based upon the same broadcasts as separate defamation claim and, therefore, the single publication/single action rule applied).[6]

---

statements besides those in the Cancer in our Resort Letter, plaintiffs fail to identify these alleged statements and therefore fail to allege defamation based on them. See Ground & Pipe Techs., LLC v. Firstliner Techs., Inc., 2005 WL 8163041, *2 (N.D. Fla. Oct. 5, 2005) ("In order to provide the defendant fair notice of a defamation claim, federal courts have also required a claimant to set out the substance of the allegedly defamatory statements."). Without a properly pled underlying tort, the civil conspiracy claim would fail regardless. See In re Palm Beach Fin. Partners, L.P., 488 B.R. 758, 777 (S.D. Fla. 2013) ("[T]he Plaintiffs [sic] claim for conspiracy to commit fraud must be dismissed because the Plaintiff fails to properly plead his underlying fraud claims."); Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006) ("Generally an actionable conspiracy requires an actionable underlying tort or wrong.").

[6] The Court recognizes "that some Florida decisions contain language suggesting that the single action rule bars non-defamation torts only when they are associated with a *failed* defamation claim." Kinsman v. Winston, 2015 WL 12839267, *5 (M.D. Fla. Sept. 15, 2015) (emphasis added). However, this Court and others have previously found that the rule applies to bar "non-defamation tort claims based on a defamatory statement . . . regardless of whether the defamation claim fails." Id.; see also Tobinick v. Novella, 2015 WL 328236, *11 n.17 (S.D. Fla. Jan. 23, 2015); Klayman, 22 F. Supp. 3d at 1257.

**C. Motion to Strike**

Each of the five claims in the Amended Complaint requests, *inter alia*, an award of "punitive damages where available" and attorney's fees. (Doc. #21, pp. 8-9, 11-12, 13.) Defendants seek to strike the request for punitive damages because "there are no specific acts plead that justify punitive damages," and the request for attorney's fees because plaintiffs "plead[] no basis" for such fees. (Doc. #27, p. 7.) As to Counts Three, Four, and Five, this issue is moot because the Court has dismissed those claims. As to the remaining claims, the Court declines to strike the requested damages and fees.

Regarding punitive damages, such damages "for defamation are compensable upon a showing that the defendants' 'primary purpose' in engaging in the defamatory act 'was to indulge ill will, hostility, and an intent to harm.'" Coton v. Televised Visual X-Ography, Inc., 740 F. Supp. 2d 1299, 1315 (M.D. Fla. 2010) (quoting Florida Standard Jury Instructions). Additionally, "punitive damages may be the primary relief in a cause of action for defamation *per se*." Roca Labs, Inc. v. Randazza, 2015 WL 248762, *3 (M.D. Fla. Jan. 20, 2015).

While Florida law provides that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages," § 768.72(1), Fla.

Stat., the Eleventh Circuit has held that this provision conflicts with Federal Rule of Civil Procedure 8(a)(3), and therefore is inapplicable in federal diversity cases. Cohen v. Office Depot, Inc., 184 F.3d 1292, 1299 (11th Cir. 1999), vacated in part on other grounds, 204 F.3d 1069 (11th Cir. 2000). Nonetheless, "merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. Instead, a plaintiff must plead specific acts committed by a defendant." Porter v. Ogden, Newell & Welch, 241 F.3d 1334, 1341 (11th Cir. 2001) (citations omitted).

The Court finds plaintiffs have met this requirement by pleading defendants published the alleged defamatory statements with the intent "to marshal the residents of the resort community to disassociate from Plaintiffs, cause Plaintiffs to permanently leave the resort and to rob them of their use and enjoyment of their property within the resort." (Doc. #21, ¶ 42.) This allegation is supported by the Cancer on our Resort Letter, which specifically urges other property owners to "encourage[e] [Andrew Maletta] to move on" from RiverBend. (Doc. #1-1, p. 2.) Accordingly, because the punitive damages requested in the Amended Complaint are sufficiently pled under Rule 8(a)(3), the Court declines defendants' request to strike. See Paylan v. Teitelbaum, 2016 WL 7974824, *4 n.5 (N.D. Fla. Dec. 22, 2016) ("[T]he fact that Plaintiff's request for punitive damages is sufficient to

survive a motion to strike does not mean that Plaintiff is necessarily entitled to receive punitive damages nor does it mean that Plaintiff's claim for punitive damages will survive summary judgment.").

As to the motion's request to strike the Amended Complaint's demand for attorney's fees, the Court finds it premature and will deny it without prejudice. See Caballero v. AAA Diversified Servs., Inc., 2010 WL 3222108, *1 (M.D. Fla. July 27, 2010) ("Because Defendants' ability to prove a set of facts demonstrating their entitlement to attorney's fees cannot be determined at this time, it would be premature to strike their request for attorney's fees."); Woods v. Deangelo Marine Exhaust, Inc., 2009 WL 10667032, *1 (S.D. Fla. Apr. 20, 2009) ("Plaintiffs' motion to strike defendant's prayer for attorney's fees is premature. The entitlement to attorney's fees is more efficiently litigated after the merits of the underlying dispute have been determined.").

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss or in the Alternative Motion for More Definiete [sic] Statement and Motion to Strike Plaintiffs' Amended Complaint (Doc. #27) is **GRANTED in part and DENIED in part** as follows:

    a. Counts Three and Four of the Amended Complaint are dismissed with prejudice as to both plaintiffs.

**b.** Count Five is dismissed without prejudice as to both plaintiffs and may be re-pled if plaintiffs can plead an actionable underlying tort.

   **c.** Counts One and Two are dismissed with prejudice as to plaintiff Polly Maletta.

   **d.** The motion is otherwise denied.

2. A Second Amended Complaint shall be filed within **SEVEN (7) DAYS** to conform with this Opinion and Order. Defendants shall respond within **FOURTEEN (14) DAYS** thereafter.

**DONE AND ORDERED** at Fort Myers, Florida, this ___11th___ day of May, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record