```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ANDREW C. MALETTA and POLLY
MALETTA,

       Plaintiffs,

v.                                      Case No:  2:20-cv-1004-JES-MRM

DAVID WOODLE and FREDERICK J.
LANGDON,

       Defendants.

_____

## ORDER

This case comes before the Court on the parties' cross motions for summary judgment. (Docs. ## 68,[1] 77.) Responses and replies were filed. (Docs. ## 76, 79, 81, 83.) For the reasons set forth, both motions are **DENIED**.

### I.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex

---

[1] The Court denied defendants' first motion for summary judgment for failure to comply with the Case Management and Scheduling Order (CMSO). (Doc. #66.) Pursuant to the CMSO, defendants were required to seek leave to file a second motion for summary judgment (Doc. #24, § 3(a)). Defendants did not seek leave. The Court will, however, consider the merits of motion to avoid any further delay.

Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v.

2

Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.")).

Cross motions for summary judgment do not change the standard. See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another; and summary judgment is inappropriate if disputes remain as to material facts. Id.; United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984).

**II.**

The following facts are undisputed.[2] The parties in the lawsuit – Plaintiff Andrew Maletta (plaintiff or Maletta), Defendant David

---

[2] No party fully complied with the CMSO. (Doc. #24.) Defendants completely failed to respond to plaintiff's statement of material facts. Although plaintiff responded to defendants' statement of material facts, plaintiff did not provide any record citations when denying statements. The Court, thus, derives this undisputed fact section from the parties' statements that include citations, are supported in the record, and are material to the dispute.

Woodle (Woodle), and Defendant Frederick Langdon (Langdon) (collectively, defendants) – are or were members of an RV community at Riverbend Motorcoach Resort (Riverbend) in LaBelle, Florida. (Doc. #76 ¶ 1; Doc. #33, ¶ 7, 9.)  Riverbend consists of 315 lots. (Doc. #76, ¶ 2; Doc. #33, ¶ 8.)

Since Maletta purchased a lot in Riverbend, Maletta has been politically involved and active in governance, legal compliance, and fiscal issues within Riverbend.  (Doc. #76 ¶¶ 5, 6.)  Maletta has served in a variety of roles within the official governance structure of Riverbend, including being a member of the Coach House Committee. (Id. ¶¶ 4, 6.)

Sometime in 2020, Woodle posted a letter titled, "A Cancer on our Resort and the Company you Keep" (the "Letter"), on a closed Facebook group consisting of Riverbend owners.  (Doc. #76, ¶ 7; Doc. # 77, ¶ 32; Doc. #1-1.)  The Letter includes two-and-a-half pages of approximately 100 signatures that were solicited by Woodle before the document was posted.  (Doc. #1-1; Doc. #77, ¶ 31.)  After the Letter was posted, Maletta asked Langdon, an administrator of the Facebook page, to remove the posting.  (Doc. #77, ¶ 34.)  Langdon did not remove the posting.  (Id. ¶¶ 35.)

The Letter reads as follows:

4

# A Cancer on our Resort and the Company you Keep

To Whom It May Concern:

Since 2014 (the year the owner in question arrived) Riverbend Motorcoach Resort has had many operational issues, many of which have been resolved or improved. Some that continue to distract and consume the time of our elected board all lead back to one owner that has fermented discord and dissent by many means.

A careful review based on discussions with owners, board members and others has led to this compilation (by no means complete, but certainly indicative) of the following list of behavioral issues:

1. Originally in 2014 the welcome center/office was required to be involved due of rude and profanity laced behavior of the owner and friends at the community pool shortly after the purchase of their lot.
2. Threatening another owner with bodily harm by another friend of the owner during a run for a board office by the owner.
3. Legal threats against the board for allowing Dave Horton to run for another term in 2014-2015. This led to the board removing Horton after he was elected (beating the owner in question) from office until an arbitrator decided in Horton's favor at an overall legal cost to the association of $10,000.
4. Legal threat and demands for book records over the workcamper program and resulting 1099s issued. Compensation to workcampers increased due to change is procedures that continually cost our association annually compared to prior procedures. Unknown legal costs to association on this issue as it lingered for some time.
5. Legal threats and bookkeeping record demands against owner Jack Kerfoot for DJ services and workcamper rentals of his lot. Unknown legal costs to association.
6. Legal threats and bookkeeping demands against the resort concerning Lee Conwell's compensation package. Unknown legal costs to association.
7. Legal threats against resort for allowing a "Reunion gathering" of prior owners at the RCH in 2019 if the event was not cancelled.
8. Instigated meeting and movement to replace Dakota Landscaping with another vendor due to his dissatisfaction with Dakota on a job issue on his personal lot. We now have 4-5 companies doing what Dakota did at considerable additional expense annually to the association.
9. Confronting Leland Jones publicly in 2015 at the annual meeting after Leland accused him of fermenting trouble since day one. Leland publicly offered to buy him out of his lot and allow him to move along.
10. Accusation against owner of putting water in his boat diesel tanks without evidence in approximately 2018.
11. Accusation against another owner of cutting his coach sewer line.
12. Accusation against another owner of slicing a car tire of a friend of his who was also an owner.
13. Calling the gate agent during the RV show in 2019 to vehemently complain he was not called to give tours to prospective renters/buyers (he had two lots for sale/rent so no conflict?).
14. Continuous complaints of tour assignments given to Dave Horton as being unfair to him.
15. He was a contributory factor in the resignation decision of former general manager, Patrick.

> 16. Legal threats and scandalous accusations (theft and dishonesty) against Dave Horton in 2019 to stop the 2019-2020 fish luncheons. Unknown legal costs to association to consult and draft agreement with Horton.
> 17. Lee Conwell spent two days of her time compiling historic restaurant sales and costs to satisfy his demand for accounting relating to past years.
> 18. Legal threats against the resort and bar manager (Chris Yeager) for allowing Superbowl football pool being conducted in bar for 2020.
> 19. Berating Lee Conwell for not consulting him before she scheduled the 2020 fun week on the same week as his pool party.
> 20. Libelous (quality and punctuality) statements against an approved resort coach house builder in the resort (who refused his business) to new prospective coach house customers in 2019-2020.
> 21. Legal threats against our current bar manager (Chris Yeager) that caused him to submit his resignation effective at the end of this season.
>
> The owner in question is **Andrew Maletta on lot 50**. He has been spoken to at length over the years by various people over his continued disruptive behavior and its effect on the community to no avail. The disharmony caused by this behavior affects the appeal of the resort and that in turn likely depresses our property values. We trust most of us can look past his sponsorship of the Margarita parties (**curiously no attribution to him in the notices about the party at his request**) three time a season as a naked attempt to curry favor with the **uninformed**. We will no longer be in this category and urge all to consider this letter. Please assist the undersigned in either no longer condoning this behavior or encouraging him to move on to somewhere that it may be welcome. Each of the undersigned is happy to discuss the contents of this letter with anyone.

(Doc. #1-1.)

### III.

Plaintiff's operative complaint asserts two counts, defamation and defamation per se, arising from the Letter. (Doc. #33.)[3] In the cross motions (Docs. ## 68, 77), the parties separately argue that they are entitled to judgment as a matter of law.

---

[3] Plaintiff invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania, Woodle is a citizen of Texas, and Langdon is a citizen of Florida. (Doc. #33, ¶¶ 1-3.) Plaintiff alleges that he has suffered over $75,000 in damages, including "harm to his interest in privacy, mental distress and special damages." (Id. ¶¶ 45, 48.)

The five required elements for defamation are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). Defamation *per se* claims are nearly the same, however, do not "require proof of actual damages." Deeb v. Saati, 778 F. App'x 683, 687 (11th Cir. 2019) (citing Lawnwood Med. Ctr., Inc. v. Sadow, 43 So. 3d 710, 712 (Fla. 4th DCA 2010)).

### A. Defendants' Motion (Doc. #68)

#### 1. Substantial Truth

Defendants first argue that the statements made in the Letter are substantially true so they are entitled to judgment as a matter of law. (Doc. #68, pp. 3-12.) "Clearly, a false statement about another is a required element of defamation." Kieffer v. Atheists of Fla., Inc., 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (citing Cape Publ'n, Inc. v. Reakes, 840 So.2d 277, 279-80 (Fla. 5th DCA 2003)). "According to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false." Smith v. Cuban Am. Nat. Found., 731 So. 2d 702, 707 (Fla. 3d DCA 1999). "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."

Smith, 731 So.2d at 706 (citations omitted). "The question of falsity, the [Supreme] Court [has] held, 'overlooks minor inaccuracies and concentrates upon substantial truth.'" Id. at 707 (quoting Masson v. New Yorker Mag., 501 U.S. 496, 517 (1991)).

"[I]n determining whether a statement is 'substantially true,' the statement in question must be read in full context of its publication." Kieffer v. Atheists of Fla., Inc., 269 So. 3d 656, 659 (Fla. 2d DCA 2019). "Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense." Id. (quoting Perry v. Cosgrove, 464 So.2d 664, 666 (Fla. 2d DCA 1985); then citing Pep Boys v. New World Commc'ns of Tampa, Inc., 711 So.2d 1325, 1328 (Fla. 2d DCA 1998) ("The questions of whether the broadcast contained false statements and/or statements that could be interpreted as false are questions of fact which should be left for a jury to determine where the communication is ambiguous and is reasonably susceptible of a defamatory meaning.")).

A review of the record evidence shows that a genuine dispute of fact exists over the substantial truth of the Letter. Viewing the evidence in light most favorable to plaintiff, a reasonable jury could find that the statements are not substantially true but instead substantially false.

### 2. Limited Public Figure

Defendants also argue that plaintiff cannot prove the third element of his claim – that defendants acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person. See Jews For Jesus, 997 So. 2d at 1106. Defendants contend that plaintiff is a "limited public figure" so must prove actual malice (i.e., knowledge or reckless disregard) by clear and convincing evidence. Defendants then conclude that plaintiff cannot prove actual malice by clear and convincing evidence.

"Public figure status 'is a question of law to be determined by the court.'" Jacoby v. Cable News Network, Inc., 537 F. Supp. 3d 1303, 1309 (M.D. Fla. 2021), aff'd, No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) (citing Mile Marker, Inc. v. Petersen Publ'g, L.L.C., 811 So.2d 841, 845 (Fla. 4th DCA 2002)). "Because of the expressive freedom guaranteed by the First Amendment, a defendant may not be held liable for defaming a public figure about a matter of public concern unless he is shown to have 'acted with actual malice.'" Id. (quoting Silvester v. Am. Broad. Cos., 839 F.2d 1491, 1493 (11th Cir. 1988)). "Two fundamental criteria help draw the line between public and private figures: (1) public figures usually have greater access to the media which gives them a more realistic opportunity to counteract false statements than private individuals normally enjoy; and, more importantly, (2) public

9

figures typically voluntarily expose themselves to increased risk of injury from defamatory falsehoods." Id. at 1310 (cleaned up).

"Courts are to employ a two-step process in determining whether a particular claimant is a limited public figure or simply a private plaintiff." Mile Marker, 811 So. 2d 845. "First, the court must determine whether there is a 'public controversy,'. . .whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." Id. (citation omitted). "After defining a public controversy, the court must then determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." Id. at 846 (citations omitted).

Based on the current record, the Court finds that there is disputed evidence as to whether plaintiff is a limited public figure. To be sure, it is undisputed that plaintiff thrust himself into the Riverbend community when running for office and serving in a variety of roles within the official governance structure of Riverbend." (Doc. #76, ¶¶ 4-6.)[4]  However, the Court is not persuaded that the

---

[4] E.g., Agar v. Judy, 151 A.3d 456, 478-79 (Del. Ch. 2017) ("Other courts similarly have held that candidates who seek to be elected to lead organizations become limited public figures for purpose of communications related to the election.") (collecting cases); but see McIntyre v. Jones, 194 P.3d 519, 527 (Colo. App. 2008) (distinguishing cases of large homeowners associations being matters of public controversy and declining to find that selecting

10

undisputed evidence shows the Letter arises from a public controversy over Riverbend's governance or plaintiff's involvement thereof. See Arnold v. Taco Properties, Inc., 427 So. 2d 216, 218 (Fla. 1st DCA 1983) ("Under the limited public figure concept, only statements relating to the controversy giving rise to the public figure status receive the protection of the actual malice standard.") Defendants' motion for summary judgment is denied.

### B. Plaintiff's Motion (Doc. #77)

To succeed on summary judgment, plaintiff must demonstrate that there are no genuine issues of material fact on each defamation element he is required to prove. Similar to defendants' substantial truth argument, plaintiff argues that the undisputed material facts demonstrate that the statements in the Letter are substantially false. (Doc. #77, pp. 9-21.) As previously discussed, there are disputes concerning the substantial truth or falsity of the Letter. When viewing the evidence in light most favorable to defendants, a reasonable jury could find that the Letter is not substantially false. Because plaintiff failed to demonstrate this essential element of his claims, his motion for summary judgment is denied.

Accordingly, it is so ordered:

1. Defendants' Motion for Summary Judgment (Doc. #68) is **DENIED**.

---

a bookkeeper for a small homeowners association was a matter of public concern).

   2. Plaintiff's Motion for Summary Judgment (Doc. #77) is **DENIED.**

   3. Plaintiff's Motion to Strike Affidavits[5] (Doc. #75) is **DENIED as moot.**

**DONE and ORDERED** at Fort Myers, Florida, this _____ day of July, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[5] In the motion to strike (Doc. #75), plaintiff requests that the Court strike 44 affidavits (Doc. #68-2) used to support defendants' motion for summary judgment for various reasons. Whether the Court considers the affidavits or not, there are material disputes of fact concerning substantial truth or falsity that must be resolved by a jury. The decision to deny the motion as moot has no impact on plaintiff's motion for sanctions for failure to obey a discovery order (Doc. #72), pending before the Magistrate Judge.