UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW C. MALETTA,

    Plaintiff,

v.                                       Case No.:  2:20-cv-1004-JES-KCD

DAVID WOODLE and
FREDERICK J. LANGDON,

    Defendants.

_____/

# ORDER[1]

Before the Court is Plaintiff Andrew Maletta's Motion for Discovery Sanctions. (Doc. 72.) Defendants have responded (Doc. 74), making this matter ripe for review. Maletta's motion is now denied.

## I. Background

The events leading to this lawsuit are all too familiar—at least in Florida. We have a gated community (the Riverbend Motorcoach Resort), neighbors pitted as rivals (Maletta and Defendants), and allegations of misconduct publicized on social media. The details are not that relevant to this discovery dispute. Suffice it to say that Defendants David Woodle and

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Frederick Landon posted a letter on Facebook blaming Maletta for ruining the neighborhood. Maletta responded by suing them for defamation. (*See* Doc. 33.)

What is relevant is the Court's prior order about electronically stored information. (Doc. 55.) Several months into discovery, Maletta accused Defendants of withholding email communications responsive to his discovery requests. The issue was litigated and Maletta won. The Court ordered Defendants to revisit their document production with help from a third-party vendor:

> [T]he Court has no confidence that Defendants' document production in response to Plaintiff's document requests was even remotely adequate. Thus, the Court will require Defendants to revisit their entire document production with the able assistance of an appropriate third-party vendor of Defendants' counsel's choosing. The Court expects Defendants to start from scratch, returning to the sources of potentially relevant and responsive electronically stored information within their possession, custody, or control. The Court also expects Defendants to make a reasonable attempt (assisted by an appropriate vendor) to recover or restore any relevant and responsive emails that they know existed at one time but were lost or deleted. Further, all electronically stored information produced by Defendants in this next round must be produced in a reasonably useable form or forms.
>
> The Court will also require Defendants' counsel personally to oversee the process of identifying, recovering, collecting, processing, and producing all of the electronically stored information sought in Plaintiff's motion to compel (Doc. 49) and Plaintiff's document requests. To be clear, the Court will not permit Defendants Woodle or Langdon to self-direct their own document collection and production efforts

> because their counsel has now informed the Court that they are ill-suited to the task. (*See* Doc. 50 at 2).
>
> Defendants' obligations under this Order, include, but are not limited to producing: (1) responsive and relevant emails in Defendant Woodle's dwoodle@charter.net and dwoodle@gmail.com email accounts; (2) responsive and relevant emails in Defendant Langdon's flang418@hotmail.com email account; and (3) the Facebook information sought in Plaintiff's Requests No. 8 to Woodle and Langdon, respectively. As it relates to emails, Defendants are ordered to include in their searches the contents of any deleted items folder, sent items folder, or other subfolder of the account, as well as any offline repositories of email data from the account.

(Doc. 55 at 8-9.)[2]

Maletta now claims that Defendants "willfully failed to comply with the Order." (Doc. 72 ¶ 42.) He thus seeks sanctions under Federal Rule of Civil Procedure 37. According to Maletta, "an appropriate sanction," besides fees and costs, "would be to prohibit Defendants from introducing or referring to documentary evidence . . . in this matter." (Doc. 72 ¶ 53.)

## II. Legal Standards

Federal Rule of Civil Procedure 37 provides "different remedies for discovery violations depending on whether those violations occur due to a party's failure to respond to discovery requests, in the context of an order granting or denying a discovery motion, or when a party disobeys a discovery

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

order." *Nukote Int'l, Inc. v. Off. Depot, Inc.*, No. 09-CV-82363-DTKH, 2015 WL 71566, at *8 (S.D. Fla. Jan. 6, 2015).

When a party violates a discovery order, as alleged here, Rule 37(b) controls. It provides that the Court may "issue further just orders," including directing facts be taken as established, prohibiting the disobedient party from introducing evidence, or striking the pleadings altogether. Fed. R. Civ. P. 37(b)(2)(A). There is also a mandatory award of attorney fees, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at (b)(2)(C).

The party moving under Rule 37(b) must first show that a court order has been violated. *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989). Once that initial burden is satisfied, the non-moving party must defend its actions on grounds it could not comply with the order after "all reasonable efforts." *Id.* Ultimately, "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).

### III. Discussion

Maletta offers a bleak narrative. He claims "Defendants admitted during their depositions that they have not complied with [the Court's] Order." (Doc. 72 ¶ 49.) That is not all. According to Maletta, Defendants also admittedly "did not search all of their electronic devices, purposefully destroyed ESI and did not disclose known ESI that was responsive to the discovery requests." (*Id.*)

4

This would be an easy case if Defendants admitted to the conduct above. But unfortunately for Maletta, they didn't. Nowhere in the deposition testimony Maletta submitted does either Defendant say he intentionally (or even accidentally) disobeyed the Court's discovery order. The closest Maletta gets to an admission of misconduct is Defendant Woodle's statements that he "cleaned up" his text messages and did "not keep e-mails." ([Doc. 72](#) ¶¶ 28, 33.) But even if those are references to deleting electronic communications, Maletta failed to pin down whether Woodle erased messages following this Court's order. That Woodle may have purged his electronic communications at some point in the past is far cry from admitting to "purposefully destroy[ing] ESI" as Maletta charges. *See [Calixto v. Watson Bowman Acme Corp.](#)*, No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009) (noting that sanctions become appropriate only when documents are destroyed after the duty to preserve them arises).

Pivoting slightly, Maletta highlights that Woodle's deposition is "replete with references to emails he sent, received[,] or has seen . . . [but] produced none of them." ([Doc. 72](#) ¶ 27.) The implication being that Woodle failed to disclose emails in violation of the discovery order.

Having reviewed the deposition transcripts, the Court is not convinced they prove misconduct. To be sure, Woodle mentions email communications that would relate to this case. But his testimony is unclear as to whether such

5

communications actually exist. Take, for example, this discussion about Woodle's efforts to secure affidavits from his neighbors:

> Q. So you produced a variety of affidavits in this case. Did you solicit those affidavits personally?
> A. Yes.
> Q. All of them?
> A. Yes.
> Q. So how did you do that? Did you walk around and talk to them, or did you e-mail them? What did you do?
> A. Went to their lots.
> Q. Okay. Did you send them any type of e-mail communications about your request to have them fill out an affidavit or otherwise cooperate with you in this case?
> A. Well, about the time of this e-mail, it looks like sometime in September, I sent -- although, what I consider -well, we'll just read the signatures, the affidavit, and just consider it.
> Q. You e-mailed it?
> A. Yes.
>
> . . .
>
> Q. So you gave them the affidavit; you gave them the cancer document?
> A. Yeah.
> Q. Okay. And how many of those did you hand out or to how many people, I should say?
> A. North of 40.
> Q. How many did you get back?
> A. Almost the same number. There were some people that were hesitant for various reasons they relayed to me.
> Q. So some did not give them back to you?
> A. Right.
> Q. Do you have a list of the people that you gave it to?
> A. No.
> Q. You have the e-mail that would have the list of people that you at least solicited initially?
> A. I don't think I kept it, no. This one? No.
> Q. Not that one, but the one that you sent after that to everybody, asking them to fill out an affidavit; you said you sent that around?
> A. Right, but that's virtually the same e-mail, the same time.

(Doc. 72 ¶ 30.) Based on this exchange, it is ambiguous whether Woodle has emails concerning the affidavits. He first says he personally solicited his neighbors' signatures—meaning there would be no email traffic. It is only later that he mentions emails, an exchange notably prompted by Maletta's counsel. The rest of the deposition testimony tells the same uncertain story. The Court declines to hold Defendants liable for discovery violations on such a nebulous record.

Maletta next turns to the issue of text messages. He notes that Defendants "did not produce a single text message in response to the discovery requests." (Doc. 72 ¶ 37.) In Maletta's view, "[i]t is implausible in this day and age that [Defendants] did not communicate via text messages with the many people involved in this case." (Id. ¶ 34.)

The Court declines to find a discovery violation based on Maletta's naked speculation about what should have been produced. But even setting that aside, that absence of text messages in Defendants' production is hardly indicative of misconduct. Defendants testified that they "rarely" text. Defendants are also technologically unsophisticated and fall into an age bracket where cellphones are not habitually glued to their hands. (*See* Doc. 55 at 9 (noting that Defendants are "ill-suited" to undertake the collection and production of electronic discovery).)

The final arrow in Maletta's quiver focuses on Defendants' failure "to provide access to [their] devices including . . . mobile phone[s] and other

7

electronic devices." (Doc. 72 ¶ 36.) This argument falls short for an obvious reason: the Court's discovery order did not require a physical examination. Defendants were tasked with "identifying, recovering, collecting, processing, and producing all of the electronically stored information sought in Plaintiff's motion to compel." (Doc. 55.) The third-party vendor Defendants hired was apparently able to recover the responsive information remotely. (*See* Doc. 74 ¶¶ 16-18.) This evidence is unrebutted, and it is enough for the Court to conclude that Defendants made a good faith effort to comply with their discovery obligations.

All the fighting about what Defendants did (or didn't do) is ultimately semantics. Even if there was misconduct, the Court declines to impose the sanctions Maletta demands. *See Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019) ("Rule 37 gives a trial court discretion to decide how best to respond to a litigant's failure[.]"); *Snider-Hancox v. NCL Bahamas Ltd.*, No. 17-20942-CIV, 2018 WL 6448765, at *3 (S.D. Fla. Dec. 3, 2018) ("District courts have broad discretion to impose appropriate sanctions for discovery violations under Rule 37(b)[.]").

As noted, Maletta seeks an order prohibiting Defendants from "introducing or referring to" any documentary evidence. That is strong medicine, as it would hamstring Defendants and effectively close the door to contesting Maletta's allegations. Defendants' conduct, even at its worst, falls well short of that line. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1555-

8

56 (11th Cir. 1986) ("[T]he harshest Rule 37 sanction[s] . . . ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders.").

Accordingly, it is now **ORDERED**:

1.      Plaintiff Andrew Maletta's Motion for Discovery Sanctions (Doc. 72) is **DENIED**.

**DONE AND ENTERED** in Fort Myers, Florida this August 9, 2022.

*[signature]*
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

9